UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARIA ATSAS and ADAMANTIA MARI,

       Plaintiffs,

   -against-          **REPORT AND**
                  **RECOMMENDATION**
LAW OFFICE OF ALEX ANTZOULATOS  20 CV 3838 (MKB) (CLP)
and ALEXANDER G. ANTZOULATOS
a/k/a ALEX ANTZOULATOS, *and any other
related persons or entities*,

       Defendants.
--------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

   On August 20, 2020, plaintiffs Maria Atsas and Adamantia Mari ("plaintiffs") filed this

action against defendants Law Office of Alex Antzoulatos (the "Firm") and Alexander G.

Antzoulatos, a/k/a Alex Antzoulatos ("defendants"), seeking damages for unpaid wages, unpaid

minimum and overtime wages, unlawful wage deductions, and violations of the wage notice and

wage statement requirements, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201 et seq., and the New York Labor Law ("NYLL") § 650, et seq.

   Despite proper service, defendants failed to file an answer or respond to the Complaint

and on October 26, 2020, the Clerk of Court issued a Certificate of Default against the

defendants.  On December 10, 2020, plaintiffs moved for default judgment.  The motion was

referred to the undersigned on December 11, 2020.

   For the reasons that follow, it is respectfully recommended that plaintiffs be awarded

damages as set forth below.

<u>FACTUAL BACKGROUND</u>

Plaintiffs allege that defendant Law Office of Alex Antzoulatos (the "Firm") is a New

York limited liability corporation located at 37-14 30th Street, Long Island City, N.Y. 11101. (Compl.[1] ¶ 9).  Defendant Alexander G. Antzoulatos, a/k/a Alex Antzoulatos ("Antzoulatos"), is alleged to be the owner, principal and manager of the Firm, who exercises substantial control over the operations and policies of the Firm.  (Id. ¶ 12).  Plaintiffs allege that defendants were an enterprise engaged in interstate commerce, with an annual gross volume of not less than $500,000.  (Id. ¶ 11).  According to plaintiffs, defendant Antzoulatos had the authority to hire, fire, set the terms and conditions of employment and set the schedules and means and methods of payment of the Firm's employees.  (Id. ¶ 14).  As such, plaintiffs allege that both the Firm and Antzoulatos were "employers" within the meaning of the FLSA and NYLL.  (Id. ¶¶ 15, 79, 92, 103).

According to the Complaint, plaintiffs were employed by the Firm as administrative assistants, performing typical administrative tasks such as answering phones, making appointments, and bookkeeping.  (Id. ¶¶ 17, 24).  Plaintiff Atsas alleges that she was employed by the Firm from August 2008 to January 2020, working on average 45 hours a week, for which she received no overtime pay for the hours worked over 40 in a week.  (Id. ¶¶ 6, 21, 27, 30).  Atsas also alleges that from August 2018 until January 2019, she typically worked from 8:00 a.m. until 6:00 p.m., and was paid $600 a week, equal to an average hourly rate of $12.00 per hour, with no overtime pay.  (Id. ¶ 26).  Beginning in January 2019, plaintiff continued to work on average 45 hours a week for which she was paid no compensation; defendants promised to pay her in the future if she continued to work.  (Id. ¶ 18).  She also alleges that she never received any paystubs, and that defendants failed to reimburse her for monies spent on office

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on February 21, 2020, ECF No. 1.

2

cleaning services, court filing fees, office supplies and other items that she was asked to obtain as part of her duties.  (Id. ¶¶ 36, 37).

Plaintiff Mari was employed by defendants as an administrative assistant, performing tasks similar to those performed by plaintiff Atsas, from November 5, 2018 until March 13, 2020, working 25 hours per week on average.  (Id. ¶¶ 7, 38, 41).  For the period from November 5, 2018 until April 12, 2019, Mari was paid $400 per week, or approximately $16.00 per hour. (Id. ¶¶ 40, 41, 42).  From April 15, 2019 until March 14, 2020, plaintiff Mari was not paid any compensation for her work for the Firm.  (Id. ¶ 43).  Plaintiff Mari alleges that defendants promised her that she would be paid for this time, but she has not been paid.  (Id. ¶ 44).

Plaintiffs bring claims that defendants failed to pay them wages in violation of the NYLL (id. ¶¶ 74-86) (Third Cause of Action); failed to pay minimum wages in violation of the FLSA and NYLL (id. ¶¶ 87-108) (Fourth and Fifth Causes of Action); violated the wage notice requirementsof the NYLL (id. ¶¶ 109-120) (Sixth and Seventh Causes of Action); made unlawful deductions in violation of the NYLL (id. ¶¶ 121-127); and failed to pay plaintiff Atsas overtime in violation of the FLSA and NYLL (id. ¶¶ 58-73) (First and Second Causes of Action).

Following the filing of the Complaint, plaintiffs served the Firm on August 27, 2020, by service upon Spiro Antzoulatos, at the office located at 37-14 30th Street, Long Island City, N.Y. (ECF No. 9).  According to the affidavit of service, Spiro Antzoulatos was an agent authorized to accept service on behalf of the Firm.  (Id.)  Service was effected on the individual defendant, Alexander Antzoulatos by service of the Summons and Complaint upon Dzery Doe, a person of suitable age and discretion, at his residence located at 3128 28th Road, Apt. 1, Astoria, N.Y. on August 27, 2020.  (ECF No. 8).  A copy was then mailed to the defendant at that address.  (Id.)

When the defendants failed to answer or otherwise move with respect to the Complaint,

the Clerk of Court entered a default on October 26, 2020.  (ECF No. 13).  Thereafter, plaintiffs

filed a motion for default judgment which was referred to the undersigned by the Honorable

Margo K. Brodie to conduct an inquest and prepare a Report and Recommendation as to

damages.

<u>DISCUSSION</u>

I. <u>Default Judgment</u>

    A.  <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ.

P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  <u>See</u> <u>Enron Oil</u>

<u>Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u>

<u>id.</u>  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default

judgment.  <u>See</u> Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has

cautioned that since a default judgment is an extreme remedy, it should only be entered as a last

resort.  <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has

recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not

processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court

must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be

heard."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96.  Thus, in light of the "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., No. 10 CV 9250, 2012 WL 3194968, at *5 (S.D.N.Y. Aug. 7, 2012).

The burden is on the plaintiffs to establish their entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have

5

admitted all well-pleaded allegations in the complaint pertaining to liability.  See id.  For the

purposes of an inquest, a court accepts as true all factual allegations in the complaint, except

those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d

Cir. 1981).

    B.   Entry of Default Judgment

        1.   Liability for Damages Alleged in Complaint

In this case, plaintiffs allege that defendants violated the FLSA, 29 U.S.C. § 206, by

failing to pay plaintiffs a minimum wage of at least $7.25 per hour.  (Compl. ¶¶ 94, 96).

Plaintiffs also allege that defendants violated the New York Labor Law not only by failing to pay

plaintiffs the proper minimum wage, but also by failing to pay them any wages at all for a period

of time.  (See Compl. ¶¶ 28, 31, 32, 40, 43; see also Atsas Aff.[2] ¶ 7; Mari Aff.[3] ¶ 7).  In addition,

plaintiff Atsas alleges that defendants failed to reimburse her $9,455.40 in office expenses that

she was instructed to pay and that defendants asked her to pay the co-plaintiff Mari $3,200,[4]

which Atsas paid out of her own pocket and was never reimbursed for.  (Atsas Aff. ¶ 10; Mari

Aff. ¶ 8).  Finally, plaintiffs allege that defendants failed to provide proper wage notices in

violation of the Wage Theft Prevention Act.  (Compl. ¶¶ 109-120).

        a)   FLSA

To establish a claim under the FLSA, plaintiffs must prove the following:  (1) the

defendant is an enterprise participating in commerce or the production of goods for the purpose

---

[2] Citations to "Atsas Aff." refers to the Affidavit of Plaintiff Maria Atsas in Support of
Motion for Default Judgment, dated December 10, 2020.
    [3] Citations to "Mari Aff." refer to the Affidavit of Plaintiff Adamantia Mari in Support of
Motion for Default Judgment, dated December 10, 2020.
    [4] The $9,455.40 includes the loan payments Atsas made to Mari, as explained in Atsas's
affidavit.  (Atsas Aff. ¶¶ 9-10).

of commerce; (2) the plaintiffs are 'employees' within the meaning of the FLSA; and (3) the

employment relationship is not exempted from the FLSA.  Edwards v. Cmty. Enters., Inc., 251

F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found.  v. Sec. of Labor,

471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for

commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling,
> or otherwise working on goods or materials that have been
> moved in or produced for commerce by any person; and . . .
> whose annual gross volume of sales made or business done is
> not less than $500,000.

29 U.S.C. § 203(s)(1)(A).[5]

The FLSA defines an "employee" as "any individual employed by an employer."  29

U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is

"any person acting directly or indirectly in the interest of an employer in relation to an employee

. . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association,

corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. §

203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA

covers both "employees who in any workweek [are] engaged in commerce or in the production

of goods for commerce" and those persons who are "employed in an enterprise engaged in

commerce or in the production of goods for commerce. . . ."  29 U.S.C. § 206(a).

---

[5] Taking plaintiffs' allegations as true, as this Court must, the Firm meets the definition
of "employer" under FLSA.  See, e.g., Magnoni v. Smith & Laquercia, LLP, 661 F. Supp. 2d
412 (S.D.N.Y. 2009) (discussing whether the plaintiff qualifies as an employee under the FLSA
but making no mention of whether the law firm-defendant is an employer under the FLSA).

In the Complaint, plaintiffs allege that defendants are employers engaged in interstate commerce, operating a business that has a gross volume business of over $500,000, thus subjecting them to the requirements of the FLSA.  (Compl. ¶¶ 9-11).  Plaintiffs further allege that they were non-exempt employees based on their responsibilities, answering phone calls, scheduling appointments, and bookkeeping duties.  (Id. ¶¶ 25, 39).  As for the individual defendant, plaintiffs allege that he was the owner, principal and manager of the Firm, with the authority to hire and fire employees, to set the rates of pay and work assignments, and policies of the Firm.  (Id. ¶¶ 12-15; Atsas Aff. ¶ 9; Mari Aff. ¶ 8).  It follows, therefore, that for purposes of this default, defendants qualify as "employers" under the FLSA, and because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiffs qualify as "employees" under the FLSA.[6]

Moreover, plaintiff Astas alleges in the Complaint that during the period of her employment, she worked from 8:00 a.m. until 6:00 p.m. with a one-hour lunch break from August 2018 until May 2019, for an average of approximately 45 hours per week.  (Compl. ¶¶ 24, 27-28; Atsas Aff. ¶ 7).  Plaintiff Atsas further alleges that she was paid a flat rate of $600 per week from August 2018 until January 6, 2019, and that from January 7, 2019 until May 31, 2019, she was not paid at all.  (Compl. ¶¶ 28, 31, 32; Atsas Aff. ¶ 7).  Plaintiff Mari claims that she worked for defendants from November 5, 2018 until March 14, 2020, working approximately 25 hours per week.  (Compl. ¶¶ 38, 40-41, 43; Mari Aff. ¶ 7).

Thus, because this is a default, the Court accepts plaintiffs' uncontested allegations as true, and respectfully recommends that plaintiffs be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA.

---

[6] See 29 U.S.C. § 213(a) setting forth the exemptions.

2)  NYLL Claims

Plaintiffs also allege that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates.  See 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).  In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread of hours" wages). 12 N.Y.C.R.R. § 142-2.4(a).

To recover under the NYLL, plaintiff must prove that she is an "employee[]" and that the defendant is an "employer" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiffs' allegations that they were employed by defendants within the meaning of Section 190(2) of the NYLL (Compl. ¶¶ 76-79), and that defendants willfully failed to pay minimum wages or overtime (id. ¶¶ 23, 113, 119), suffice to establish a violation of the minimum wage and overtime requirements of the NYLL.

3) Plaintiffs' Other Claims

In addition to their minimum wage claims, plaintiffs raise a number of other claims under state and federal law, which when viewed within the totality of the allegations of the Complaint, state claims for unlawful wage deductions and wage notice violations.  Specifically, plaintiffs'

allegations that defendants required Atsas to cover various office expenses without reimbursement and to pay the wages of co-plaintiff Mari state claims of unlawful deductions of wages in violation of the NYLL.  (Compl. ¶ 37; Atsas Aff. ¶ 9).  The Complaint further alleges that defendants violated the Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3), in that they never received the notice required by Section 195(1)(a), which must be provided within ten business days of hiring, nor did they ever receive a statement containing the information required by Section 195(3).  (Id. ¶¶ 36, 47).

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiffs be deemed to have adequately alleged the elements necessary to state claims under the FLSA and New York Labor Law.

C.  Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiffs have sufficiently established liability so as to warrant entry of a default judgment for the requested damages.  See 29 U.S.C. § 207(a)(1).

Here, it is beyond dispute that defendants are in default.  Although it appears that defendants were properly served with the Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings.  Moreover, the failure by the Firm to obtain counsel in this case constitutes a failure to defend because the corporate defendant, as a corporation, cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).  Defendants also failed to respond to plaintiffs' request that

10

default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that

"[defendant's] default is crystal clear – it does not even oppose this motion"), and they did not

submit papers in response to plaintiff's motion for default judgment.  Thus, plaintiff's evidence

on damages is undisputed.

Here, defendants' failure to comply with the Court's Order to appear in this action or

respond to plaintiffs' papers requesting default judgment warrants the entry of a default

judgment in this matter.  Additionally, the amount of money involved in this case is not

significant, unlike a case in which there are potentially millions of dollars involved.  See id.

(entering default but giving defendant 20 days to set aside the default because plaintiff's

damages request ran well into the millions of dollars).

Given the numerous opportunities afforded to defendants, and their apparent lack of

interest in participating in these proceedings, the Court finds no compelling reason to delay

further.  Accordingly, it is respectfully recommended that default judgment be entered against

defendants Alexander G. Antzoulatos and the Law Office of Alex Antzoulatos.

II.  Damages

A.  Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-

pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v.

E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977

(S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au

Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60

(S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988).  However, the

plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the

opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, because the plaintiffs have provided reasonably detailed affidavits in support of their request for damages, the Court sees no reason not to proceed.

B.  Damages Requested by Plaintiffs

1)  Minimum Wages Under the FLSA and the NYLL

Plaintiffs seeks reimbursement for the minimum wages that they should have received pursuant to both the FLSA and the NYLL.  (See Compl. ¶ 55).  During the period December 31, 2018 through December 30, 2019, the minimum wage rate for employees in New York City was $13.50, and from December 31, 2019 on, the minimum wage rate was $15.00 an hour.  NYLL § 652.  For every hour worked in excess of 40 hours per week, the overtime rate under the NYLL

and FLSA is one-and-one-half time the employee's regular hourly rate or minimum wage rate. 29 U.S.C. § 207; 12 NYCRR §142.2.2.

Although plaintiffs have proven that they were not paid the proper minimum wage under both the FLSA and the NYLL, plaintiffs "are not entitled to recover twice for the same injury." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, No. 12 CV 1356, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014); see also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice").  Having established wage violations under both laws, plaintiffs "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) (citation omitted)).

Accordingly, since plaintiffs prevailed under both state and federal law, "the law providing the greatest recovery will govern." (Id. (quoting Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), report and recommendation adopted by 2011 WL 2038973 (S.D.N.Y. May 24, 2011)); Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012)).  Here, because the minimum wage rate in New York was higher than the federal minimum wage rate, the Court

respectfully recommends that plaintiffs be awarded unpaid minimum wages from defendants

based on their minimum wage claims under the NYLL.

a)  Plaintiff Atsas

Plaintiff Atsas asserts that although defendants paid her $600 a week from August 2018

until May 31, 2019, she worked an average of five hours per week in excess of 40 hours per

week.  (Compl. ¶¶ 28, 32; Atsas Aff. ¶ 7).  "Under the FLSA, the 'regular hourly rate of pay of

an employee is determined by dividing his total remuneration for employment (except statutory

exclusions) in any workweek by the total number of hours actually worked . . .'"  Yu Wei Cao v.

Miyama, Inc., No. 15 CV 266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019) (citations

omitted).  Under the NYLL, the regular rate is calculated "by dividing the employee's total

weekly earnings, not including exclusions from the regular rate, by the *lesser* of 40 hours or the

actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-

3.5 (emphasis added).  "In actions to recover unpaid minimum wages and overtime pay under

both the FLSA and the NYLL, Plaintiffs may recover under whichever statute provides the

greater relief."  Yu Wei Cao v. Miyama, Inc., 2019 WL 4279407, at *9 (citations omitted).

Here, the NYLL allows for the greater recovery because plaintiff Atsas's regular rate of pay will

be determined by dividing her weekly wage by forty hours, rather than by the 45 hours she

actually worked each week.  Thus, at the rate of $600 per week, plaintiff's hourly rate was

$15.00 per hour ($600 per week divided by 40 hours per week).  Since plaintiff Atsas worked 45

hours per week or five hours beyond the 40 hours each week, she should have received an

additional $7.50 per hour for every hour over 40 that she worked from August 2018 until

January 6, 2019, or a total overtime amount of $112.50 per week ($15.00 per hour x 1.5

14

overtime rate x 5 hours per week of overtime).  Given that there were 23 weeks in that period of time, plaintiff Atsas is owed overtime wages of $2,587.50.

From January 7, 2019 until May 31, 2019, plaintiff Atsas was never paid any salary, or hourly or daily wages.  Thus, given that the minimum wage rate at that time under the NYLL was $15.00 per hour, she should have been paid an additional $600 per week for the 21 weeks during that time period, or $12,600.00 in minimum wages.  In addition, because she continued to work five hours of overtime, she should have been paid an additional $112.50 per week in overtime, or a total of $2,362.5 in overtime wages.  As such, in minimum wages and overtime payments, plaintiff Atsas is owed a total of $14,962.50.

In addition, plaintiff Atsas claims that during the course of her employment, defendant Antzoulatos asked her on several occasions to cover certain office charges out of her own pocket. These include:  $210.00 to e-file a complaint for a case; $4,400.00 for office cleaning services;[7] $400.00 for computer repairs; and $1,245.40 for miscellaneous expenses such as food for the office.  (Compl. ¶ 37; Atsas Aff. ¶ 9).  In addition, plaintiff Atsas was directed to pay $3,200 in "loans" to plaintiff Mari to cover Mari's wages.  (Compl. ¶ 37; Atsas Aff. ¶ 9; Mari Aff. ¶¶ 7-8). Plaintiff Atsas was never reimbursed for any of these expenses, which total $9,455.40.

Thus, in total, including unpaid wages and unlawful wage deductions, plaintiff Atsas is owed $27,005.40.  Having reviewed the affidavits of the plaintiffs, which have not been challenged by defendants, the Court respectfully recommends that plaintiff Atsas be awarded

---

[7] In support of her claim for $4,400 in cleaning services, plaintiff Atsas submitted a letter dated November 24, 2020 from Pothiti Giannikuri, who stated that she was employed to clean the Firm's offices once a week for $200.  (ECF No. 17-2).  She explains that when the defendant was experiencing financial issues in 2019, he instructed Atsas to pay her a weekly salary out of her own pocket and that he would reimburse her:  "Maria please take care of Pothiti until the funding comes in and I will reimburse you."  (Id.)  Over a period of 22 weeks, Ms. Giannikuri states that she received $4,400 from plaintiff Atsas.  (Id.)

$27,005.40 in unpaid minimum wage, unpaid overtime wages, and as reimbursement for her out-of-pocket expenses.

b)  Plaintiff Mari

Plaintiff Mari claims that from April 15, 2019 until March 14, 2020,  she worked 25 hours per week and was not paid any wages at all.  (Compl. ¶ 43; Mari Aff. ¶ 7).  Based on the $16.00 per hour rate at which she was initially paid when hired, plaintiff Mari was entitled to receive $400 per week.  Given that there were 48 weeks during the period, plaintiff Mari was owed $19,200.00 for the period.

Given that plaintiff Mari's calculation of damages has not been challenged by defendants, it is respectfully recommended that she be awarded $19,200.00 in unpaid wages,[8] minus the loan payment provided by plaintiff Atsas of $3,200, for a total of $16,000.00.

2)  Liquidated Damages Under the NYLL

Plaintiffs also seek liquidated damages for the underpayment of their wages pursuant to the NYLL.

The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); NYLL §§ 198(1-a) and 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under

---

[8] Plaintiff Mari does not request overtime wages.  (See Mari Aff. ¶ 6).

both statutes, the employer bears the burden of proving good faith and reasonableness.  Under

the NYLL's liquidated damages provision, "courts have not substantively distinguished the

federal standard from the current state standard of good faith."  Inclan v. New York Hosp. Grp.,

Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV

5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014)); Eschmann v. White Plains

Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)).

Accordingly, the employer's burden of proving good faith "is a difficult one, with double

damages being the norm and single damages the exception."  Gortat v. Capala Bros., 949 F.

Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142

(2d Cir. 1999), and awarding 100% liquidated damages under the FLSA standard).

Since the defendants have chosen not to appear in this action and have not established

that they had a good faith basis to believe that their underpayment of wages was in compliance

with the NYLL or the FLSA, the Court respectfully recommends that plaintiffs be awarded

liquidated damages in an amount equal to the amount of unpaid minimum wages and unpaid

overtime pay under the NYLL.

Accordingly, the Court respectfully recommends that plaintiffs be awarded liquidated

damages in the amount of $27,005.40 for plaintiff Atsas, which is the amount of unpaid wages

she is owed, and $16,000.00 for plaintiff Mari.

### 3)  Wage Statement Violation Penalties

Under the NYLL, employers are required to give each employee a notice of her rate of

pay at the time of hiring.  N.Y. Lab. Law § 195(1)(a).  This notice is required to contain the rate

or rates of pay, whether she was to be paid by the hour, shift, day, week, any allowances claimed

as part of the minimum wage, the regular pay day, the name of the employer, the physical

address of the employer's main office, and the employer's telephone number.  Plaintiffs allege

that they were  never provided with such a notice at the time of hire.  (Compl. ¶ 27).  Under the

NYLL, a plaintiff may recover $50 for each workday during which the employer failed to

provide this notice, not to exceed $5,000.  See Cabrera v. 1560 Chirp Corp., No. 15 CV 8194,

2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (citing 2014 N.Y. Laws ch. 537 § 2, amending

N.Y. Lab. Law § 198(1-b)).

        Under the NYLL, employers are required to give each employee a pay stub listing

various specific pieces of information with each paycheck.  See N.Y. Lab. Law § 195(3).  If an

employer fails to provide plaintiff with a pay stub, plaintiff may recover $250 for each workday

for which the employer fails to give this notice; however, this amount is not to exceed $5,000.

See Cabrera v. 1560 Chirp Corp., 2017 WL 1289349, at *6 (citing 2014 N.Y. Laws ch. 537 § 2,

amending N.Y. Lab. Law § 198(1-d)).  Plaintiffs assert that they never received a wage statement

or pay stub during the time of their employment with defendants.  (Compl. ¶ 118).

        Although plaintiffs alleged violations of both NYLL §§ 195(1) and 195(3) in their

Complaint (see Compl. ¶¶ 112, 118), in their motion for default judgment, plaintiffs only

requested $5,000 in damages for violations of NYLL § 195(3) for both plaintiffs Atsas and Mari.

Since plaintiffs worked over 20 days for defendants, they are both entitled to receive $5,000 for

the violation of NYLL § 195(3).  Moreover, since they have not requested damages for

violations of NYLL § 195(1), the Court has not considered damages under that section.

        4)  Interest

        Plaintiffs contend that they are entitled to interest on all wages awarded, pursuant to the

NYLL, calculated at a rate of 9% per annum.  See N.Y. C.P.L.R. § 5004.  Pre-judgment interest

is not available under the FLSA because the federal statute does not allow an employee to

recover "prejudgment interest on any portion of their recovery for which they have been awarded

federal liquidated damages," since liquidated damages under the FLSA "are considered

compensatory in nature and thus serve as a form of pre-judgment interest."  Yuquilema v.

Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014)

(citations and quotation marks omitted), report and recommendation adopted by 2014 WL

5039428 (S.D.N.Y. Sept. 30, 2014); Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.

However, the Second Circuit has held that, as liquidated damages and pre-judgment

interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both

for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d

Cir. 1999).[9]  In this case, since the Court did not award plaintiffs damages on their FLSA

claims,[10] there is no impediment to awarding liquidated damages and interest on plaintiffs'

NYLL claims.  However, pre-judgment interest is available only on a plaintiff's actual damages,

not on liquidated damages or wage statement and wage notice penalties.  See Gamero v. Koodo

Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).

Accordingly, plaintiffs are only entitled to pre-judgment interest on their unpaid

minimum wages and overtime wages.  Where, as here, violations of the NYLL occur over an

extended period of time, courts calculate pre-judgment interest from an intermediate date.  See,

---

[9] However, where plaintiffs receive damages under both the FLSA and the NYLL, pre-judgment interest accrues on any amounts for which liquidated damages are not awarded under the FLSA (see id.); pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 92-93; see also Hengjin Sun v. China, 2016 WL 1587242, at *5-6 (citing cases and holding that plaintiffs are entitled to pre-judgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).

[10] Although the plaintiff established that defendants violated both the FLSA and NYLL, the Court only recommends an award of damages and liquidated damages under the NYLL.

e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2,

2011).  Here, for plaintiff Atsas, plaintiffs calculated her interest as $4,044.99.  For plaintiff

Mari, plaintiffs calculated her interest as $1,940.35.  However, despite including these numbers

in their calculations, the only reference to how these sums were calculated is in a footnote to the

damages' calculation chart, stating:  "Interest is calculated by the total owed being multiplied by

the legal interest rate of 9%.  The resulting amount is multiplied by the intermediate number of

days and then divided by 365 days."  (See ECF No. 17-1).  Without knowing the intermediate

date, the Court is unable to confirm this amount and respectfully recommends allowing plaintiffs

to supplement their interest calculations within 30 days of this Report and Recommendation.

III. Attorney's Fees and Costs

     Plaintiffs also seek an award of $19,300.00 in attorney's fees and $700.00 in costs

incurred in connection with this action, pursuant to the FLSA, 29 U.S.C. § 216(b), and NYLL §§

198(4), 663(1).  (Ex. D, ECF No. 17-4).

     A.  Prevailing Party

     The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee

to a prevailing party in an FLSA action.  Khalil v. Original Old Homestead Rest., Inc., 657 F.

Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an

FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a

reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis

supplied)); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144,

at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL

provides for an award of reasonable attorney's fees when the employee prevails on a wage claim.

N.Y. Lab. Law § 663(1).  Section 663 provides that successful employees are entitled to:

> "[R]ecover in a civil action the amount of any such
> underpayments, together with costs all reasonable
> attorney's fees, prejudgment interest as required
> under the civil practice law and rules . . . ."

Id.  Plaintiffs are prevailing parties under the FLSA and NYLL "'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990) (holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiffs are prevailing parties and therefore should receive an award of reasonable attorney's fees and costs.

B.  Calculation of Reasonable Attorney's Fees

1)  Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee.  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), report and recommendation adopted by 2013 WL 1622713 (April 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.   Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"   Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673).   Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"   Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.   In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."   Id.   As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[11]   2012 WL 676350, at *5, n. 6.

_____

[11] The Johnson factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee;

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1943 (1983). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'" Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

   2)   Analysis

In this case, plaintiffs were represented by the Bell Law Group, PLLC (the "Bell Firm"), which is located at 100 Quentin Roosevelt Boulevard #208, Garden City, N.Y. 11530. In accordance with New York State Association for Retarded Children, Inc. v. Carey, the Firm

---

(6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (See Madzelan Aff.,[12] Ex. D).  Plaintiff seeks attorney's fees in the amount of $19,300, representing services performed by Paul Bartels, Esq., Of Counsel to the Bell Firm, and Matthew P. Madzelan, an associate of the Bell Firm.  (Madzelan Aff. ¶¶ 1, 2).  According to Mr. Madzelan's Affirmation, Mr. Bartels received his J.D. from St. John's University School of Law in 2009 and has more than 10 years practicing in the field of employment litigation; his hourly rate is $400 per hour.  Mr. Madzelan received his J.D. from Hofstra University School of Law in 2012 and has been practicing employment litigation for approximately five years, billing at the rate of $300 per hour.  (Id.)  Mr. Madzelan cites a number of cases in the Eastern and Southern Districts where firms of similar size and attorneys of comparable skill and experience have been awarded fees at the rates charged here.  (Id. (citing Rosario v. Structural Preservation Systems, LLC, No. 17 CV 3302, 2019 WL 1383642, at *3 (S.D.N.Y. Jan. 2, 2019); Quito v. El Pedragal Rest. Corp., No. 16 CV 6634, 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017); Rosendo v. Everbrighten Inc., No. 13 CV 7256, 2015 WL 1600057, at *8 (S.D.N.Y. Apr. 7, 2015)).   Based on this precedent, the Bell Firm seeks an award of fees calculated at the rate of $400 per hour for Mr. Bartels and $300 per hour for Mr. Madzelan.

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rates of $400 per hour for a lawyer with Mr. Bartels' experience, and $300 an hour for Mr. Madzalan, are within the range of billing

_____

[12] Citations to "Madzelan Aff." refer to the Attorneys' Fee Affirmation, dated December 10, 2020.

rates of similarly experienced attorneys working on comparable matters in the Eastern District.
See, e.g., Guinea v. Garrido Food Corp., No. 19 CV 5860, 2020 WL 136643, at *2 (E.D.N.Y.
Jan. 13, 2020) (finding $350-$450 per hour for partner time and $250-$300 per hour for
associate time "reasonable and consistent with rates in this district"); Christian v. Metropolitan
Speciality Lab's, Inc., No. 17 CV 4721, 2019 WL 3729458, at *10 (E.D.N.Y. Aug. 8, 2019)
(noting that "attorneys of significant experience and reputation in the district have been awarded
hourly rates ranging from $300.00 to $450.00").  The Court notes that Mr. Bartels is in an "of
counsel" position at the Bell Firm, not a partner.  Although courts have granted rates for of-
counsel positions between the prevailing Eastern District ranges for partners and senior
associates" when those attorneys are in an advisory position, Luca v. City of Nassau, 698 F.
Supp. 2d 296, 305 (E.D.N.Y. 2010), here, it appears that Mr. Bartels was far more than merely
advisory.  In fact, of the 48.5 total hours spent on this matter, 32.5 hours were by Mr. Bartels.
As such, $400 per hour for an of-counsel role is reasonable as it is within the range of a partner
position within the Eastern District of New York.  See, e.g., Bin Gao v. Jian Song Shi, et al., No.
18 CV 2708, 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021).

　　　　Turning to the number of hours billed, Mr. Bartels billed a total of 32.5 hours and Mr.
Madzelan billed a total of 16 hours for legal work performed in connection with this matter.
(See Madzelan Aff., Ex. D).  In reviewing a fee application, the court "should exclude excessive,
redundant or otherwise unnecessary hours."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d
Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of
Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage
reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City
Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and

another's by 30% for unnecessary and redundant time); <u>Perdue v. City Univ. of N.Y.</u>, 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); <u>American Lung Ass'n v. Reilly</u>, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, <u>see, e.g.</u>, <u>In re Olson</u>, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); <u>DeVito v. Hempstead China Shop, Inc.</u>, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, <u>inter alia</u>, insufficient descriptions of work performed), <u>rev'd & remanded on other grounds</u>, 38 F.3d 651 (2d Cir. 1994); <u>Cabrera v. Fischler</u>, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), <u>rev'd in part & remanded on other grounds</u>, 24 F.3d 372 (2d Cir.), <u>cert. denied</u>, 513 U.S. 876 (1994); <u>Nu-Life Constr. Corp. v. Board of Educ.</u>, 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); <u>Meriwether v. Coughlin</u>, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

Having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, the Court finds that the number of hours charged in this matter is reasonable, given the amount of work performed.  Accordingly, based on the hourly rate set forth above, and

the hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded

$17,800 in attorney's fees.[13]

C.  <u>Reasonable Costs</u>

Plaintiffs also requests $700 in costs for filing fees ($400) and service of process fees:

$150.00 for service fees for each defendant for a total of $300 on service fees.  (Madzelan Aff.,

Ex. D).

Based on a review of the record, the Court finds these costs to be reasonable, and

respectfully recommends that plaintiff be awarded $700 in costs.  <u>See</u> <u>Finkel v. Triple A Grp.,</u>

<u>Inc.</u>, 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees,

service of process, legal research, and postage); <u>see also</u> <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d

362, 374 (S.D.N.Y. 2005) (citing <u>Kuzma v. Internal Revenue Serv.</u>, 821 F.2d 930, 933-34 (2d

Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as

photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished

from nonrecoverable routine office overhead, which must be absorbed within the attorney's

hourly rate").  In sum, the Court recommends that plaintiff be awarded $17,800.00 in attorney's

fees, plus an additional $700 in costs, totaling $18,500.00.

<u>CONCLUSION</u>

The Court respectfully recommends that plaintiffs' motion for entry of a default

judgment be granted, and that plaintiff be awarded the following damages:  (1) $27,005.40 for

unpaid minimum wages and overtime wages for plaintiff Atsas and unlawful wage deductions;

---

[13] In the affirmation of attorney's fees, plaintiffs' counsel represent that they are seeking $400 an hour for Mr. Bartels' time and $300 an hour for Mr. Madzelan's time. However, in their contemporaneous billing records, they calculate the total due in attorney's fees with two separate rates, one at $400 an hour and one at $350 an hour. As such, the Court corrects the total amount to the $300 an hour rate requested by Mr. Madzelan.

(2) $16,000.00 for unpaid minimum wages for plaintiff Mari; (3) $5,000.00 owed to each plaintiff for wage statement violations; (4) $43,005.40 in liquidated damages; and (5) $18,500.00 in attorney's fees and costs. The Court further respectfully recommends that the defendants be held jointly and severally liable for the judgment. Finally, the Court respectfully recommends plaintiffs be allowed to supplement their pre-judgment interest calculations.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the record within two weeks of the date of this Report.

**SO ORDERED.**

Dated:  Brooklyn, New York
        August 10, 2021

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York